**STATE of Iowa, Appellee,**

v.

**Daniel WARE, Appellant.**

No. 68553.

Supreme Court of Iowa.

Sept. 21, 1983.

Michael J. McCarthy, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and William E. Davis, Scott County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON and WOLLE, JJ.

WOLLE, Justice.

Defendant Daniel Ware (Daniel) appeals from his conviction by jury of murder in the first degree and robbery in the first degree. Daniel raises four issues, all of which are quite similar to issues raised by his half-brother and co-defendant Albert Wayne Ware (Albert) which we have decided in the opinion we are filing today. *State v. (Albert) Ware,* 338 N.W.2d 707 (Iowa 1983). References to our decision in that case will be to "*Ware I*". Daniel alleges that he was convicted entirely on the basis of uncorroborated testimony of an accomplice and that the trial court erred in failing to instruct on lesser included offenses, in denying his motion for change of venue, and in admitting in evidence a witness's written statement. We find no error and affirm.

I. *Sufficiency of Corroborative Evidence.* The testimony given by the accomplice Dennis Williamson is summarized in *Ware I* as is the evidence upon which the State relies for corroboration. *Ware I,* 338 N.W.2d at 710. In *Ware I,* however, the question was whether there was independent evidence connecting Albert to the crime. Here we must determine whether Daniel is connected to the crime by substantive evidence other than the testimony of the accomplice Williamson.

■ From the evidence presented against Daniel, the jury could have found that Williamson's testimony was corroborated by independent evidence concerning Williamson's breaking into the glove box of Tappa's car and ballistic evidence showing similarity between the bullet which felled Tappa and bullets given to Albert by David Ogburn. The most telling corroboration concerning Daniel, however, is independent testimony of two witnesses concerning two phone calls Daniel made to the Sports Page Lounge on the night of the robbery.

Nancy Jensen, an employee of the Sports Page Lounge who knew Daniel and recognized his voice, testified that he telephoned the lounge on the evening of the Tappa killing and asked to cash a check. This corroborated the first call described by Williamson, the purpose of which was to determine if Tappa had yet arrived with the money or was at his girlfriend's residence.

Chris Fairley, a lounge bartender, testified about the second of Daniel's two phone calls which Williamson had described. Fairly said he received a phone call that night from a male caller who asked if Tappa were there to cash checks. This corroborated Williamson's testimony that Daniel called the lounge again after the attempt to break into Tappa's car had failed. While Fairley was unable to identify Daniel as the caller, and while both Jensen's testimony and Fairley's testimony were not entirely consistent with Williamson as to the approximate hour of day when the phone calls were made, both phone calls substantially corroborated important aspects of Williamson's testimony which connected Daniel to the crime.

■ This corroborative testimony is sufficient because it tends to connect the accused with the commission of the crime and supports the credibility of the accomplice. *State v. Vesey,* 241 N.W.2d 888, 890 (Iowa 1976). The existence of corroborative evidence is a question of law for the court, but its sufficiency is ordinarily a question of fact for the jury. *State v. Bizzett,* 212 N.W.2d 466, 469 (Iowa 1973). We have often said that corroborative evidence need not be strong as long as it can fairly be said to connect the defendant with the commission of the crime in some material fact. *State v. Dickerson,* 313 N.W.2d 526, 529 (Iowa 1981). Here, the two phone calls by Daniel corroborated and did connect him to the crime.

II. *Impeachment of the Witness Cady.* By separate order we have granted Daniel

permission to make the same contention as Albert has made concerning the State's use of prior written statements to impeach the witness Sandy Cady, Albert's girlfriend. For the reasons given in our opinion in Ware I we uphold the trial court's ruling which admitted the written statement and allowed it to be read solely for impeachment purposes. *Ware I*, 338 N.W.2d at 711.

■ III. *Denial of Motion for Change of Venue.* Daniel and Albert filed a joint motion for change of venue. Their contentions here concerning the newspaper accounts which preceded selection of a jury are essentially the same. Neither Daniel nor Albert demonstrated at the hearing on the motion for change of venue, nor do they demonstrate in their briefs, that the news accounts denied them their right to a fair and impartial jury trial. The trial court did not abuse its discretion in finding that a fair trial could be held in Scott County and accordingly in denying Daniel's motion for change of venue. *See Ware I*, 338 N.W.2d at 713.

■ IV. *Adequacy of Jury Instructions.* Like Albert, Daniel challenges the trial court's jury instructions on the ground that he was entitled to have the lesser included offenses of voluntary and involuntary manslaughter submitted to the jury not only as to premeditated first degree murder but also as to felony murder. For the same reasons as are given in our opinion in Ware I, we find that the court did not err in so instructing the jury because there was not a factual basis for submission of those lesser included offenses. *Ware I*, 338 N.W.2d at 714.

We find no reversible error in any of the trial court's rulings and find the convictions supported by corroborated substantial evidence.

AFFIRMED.