# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2447

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| James Lippert, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: February 11, 1998
Filed: July 2, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BOGUE,[*] District Judge.

_____

LOKEN, Circuit Judge.

In 1993, James Lippert pleaded guilty to one count of knowingly and willfully soliciting and accepting kickbacks in violation of the Anti-Kickback Act of 1986, 41 U.S.C. § 54. He served an eighteen-month prison sentence and paid a $5,000 criminal fine. In September 1994, the United States filed this action against Lippert and others, seeking civil penalties under the Anti-Kickback Act and the False Claims Act, and

_____

[*]The HONORABLE ANDREW W. BOGUE, United States District Judge for the District of South Dakota, sitting by designation.

damages for common law fraud. The district court[1] granted judgment in favor of the government on its Anti-Kickback Act claim. Lippert appeals, arguing violations of his rights under the Double Jeopardy Clause and the Excessive Fines Clause. Concluding the Double Jeopardy Clause does not apply to this civil penalty, and the penalty was not constitutionally excessive, we affirm.

Lippert was president of C.B. Forms, L.P., a company awarded a series of contracts to print and supply forms for the Commodity Credit Corporation (CCC), a United States government agency. In performing these contracts, Lippert procured kickbacks from shipping subcontractors. The subcontractors submitted invoices to C.B. Forms that included the agreed kickbacks. CB Forms paid the subcontractors, and the United States reimbursed CB Forms for its shipping costs. The subcontractors then paid C.B. Forms the kickbacks and in some cases paid additional kickbacks to Lippert personally. The subcontractors paid a total of $176,411.80 in kickbacks, $140,114.70 to C.B. Forms, and $36,297.10 to Lippert. The scheme was uncovered when the government learned that one subcontractor was charging a different contractor a thirty percent lower shipping rate.

Following Lippert's criminal conviction, the district court held a sentencing hearing to determine the government's loss. A procurement officer testified that the kickbacks allowed C.B. Forms to submit a lower bid based upon its costs of production and then charge inflated, reimbursable shipping prices, resulting in increased total contract costs to the United States. The court found that the government loss was between $200,000 and $350,000 and sentenced Lippert accordingly. See U.S.S.G. §§ 2B4.1(b)(1), 2F1.1. The United States then brought this civil action against Lippert and C.B. Forms. The government dismissed its claims against C.B. Forms when it filed for bankruptcy protection, and then sought summary judgment against Lippert.

---

[1]The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri.

The district court granted summary judgment under the Anti-Kickback Act and the False Claims Act, concluding that Lippert was collaterally estopped by his guilty plea to contest liability issues. Turning to questions of remedy, the court noted that the government "is bringing this action against Lippert as a remedial measure to compensate the United States for the losses incurred as a result of defendant's conduct." Therefore, the court reasoned, recovery under the Anti-Kickback Act *and* the False Claims Act would be duplicative. The court advised the government that it was entitled to immediate judgment as a matter of law under the Anti-Kickback Act for double the amount of the kickbacks, or $352,823.60, or under the False Claims Act for civil penalties totaling $50,000; alternatively, the government could try its claims for a greater recovery. The government elected judgment under the Anti-Kickback Act for $352,823.60, and this appeal followed.

In recent years, the Supreme Court has issued a series of decisions applying the Double Jeopardy Clause and the Excessive Fines Clause to forfeitures and civil penalties. Two recent decisions have sharpened our focus -- the Double Jeopardy Clause decision in Hudson v. United States, 118 S. Ct. 488 (1997), issued after the parties' briefs but before oral argument, and the very recent Excessive Fines Clause decision in United States v. Bajakajian, 1998 WL 323512 (U.S. June 22, 1998). In our view, Hudson resolves the Double Jeopardy Clause issue in the government's favor. The Excessive Fines Clause issue is perhaps more difficult after Bajakajian.

## I. The Double Jeopardy Clause Issue.

Lippert initially argued the civil penalty here at issue was a successive punishment that violates the Double Jeopardy Clause as construed in United States v. Halper, 490 U.S. 435, 449 (1989). In Halper, the Court held that the Double Jeopardy Clause protects a convicted criminal defendant from a second punishment in the form of a civil sanction that "may not fairly be characterized as remedial" because it is "overwhelmingly disproportionate to the damage [the defendant] has caused." In

Hudson, however, the Court "disavow[ed] the method of analysis used in" Halper and returned to its previous double jeopardy rule. 118 S. Ct. at 491. Under Hudson, "[t]he Clause protects only against the imposition of multiple *criminal* punishments for the same offense." Determining whether a particular punishment is criminal or civil is initially a question of statutory construction. If the statute is construed as intending a civil penalty, then a court must inquire "whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Both inquiries require evaluation of the statute "on its face." 118 S. Ct. at 493-494. "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. at 493, quoting United States v. Ward, 448 U.S. 242, 249 (1980).

The judgment against Lippert was imposed under the Anti-Kickback Act's civil penalty provision, which provides:

> (a)(1) The United States may, in a civil action, recover a civil penalty from any person who knowingly engages in conduct prohibited by section 53 of this title. The amount of such civil penalty shall be --
>
> > (A) twice the amount of each kickback involved in the violation; and
> >
> > (B) not more than $10,000 for each occurrence of prohibited conduct.

41 U.S.C. § 55(a)(1). Applying the foregoing Hudson principles, it is apparent this is not a criminal punishment and therefore its imposition after a criminal conviction does not violate the Double Jeopardy Clause. On its face, the statute is clearly civil in nature. Section 55 is titled "civil actions," and § 55(a)(1) uses the word "civil" three times. The statute's legislative history refers to a "civil cause of action" that could proceed in "civil court" resulting in "civil liability" in an "amount which reasonably

relates to the actual costs the government suffers when kickbacks occur." H.R. Rep. No. 99-964, at 14-15, <u>reprinted in</u> 1986 U.S.C.C.A.N. 5960, 5971-72. Congress's intent to enact a non-criminal penalty is confirmed by comparing § 55(a)(1) with the immediately preceding section, 41 U.S.C. § 54, which established "criminal penalties" of a fine and imprisonment for anyone "who knowingly and willfully engages in conduct prohibited by section 53." The various Anti-Kickback Act sanctions are carefully calibrated as to their scienter requirements -- "knowingly and willfully" for the criminal sanctions in § 54, "knowingly" for the double civil penalty in § 55(a)(1), and absolute vicarious liability for the single civil penalty in § 55(a)(2).

Having established that Congress intended a civil remedy, we must consider whether that remedy is "so punitive in purpose or effect" as to be transformed into criminal punishment. While § 55(a)(1)(B) reflects the punitive purpose of deterrence by authorizing a penalty of "not more than $10,000 for each occurrence," the "mere presence of this purpose is insufficient to render a sanction criminal." <u>Hudson</u>, 118 S. Ct. at 496. More significantly, the penalty in § 55(a)(1)(A) of twice the amount of each kickback is primarily remedial in purpose and not punitive in effect. There can be no doubt that kickbacks harm government contracting agencies, and there is a broad consensus (i) that it is difficult to prove the government's actual contract damages from a particular kickback scheme, and (ii) that the government must incur additional investigative and enforcement costs to ferret out and stop these abusive schemes. <u>See United States v. Acme Process Equip. Co.</u>, 385 U.S. 138, 144 (1966); H.R. Rep. No. 99-964, 1986 U.S.C.C.A.N. at 5972. In sum, we conclude that 41 U.S.C. § 55(a)(1) is a civil penalty, and therefore the Double Jeopardy Clause does not apply.

## II. The Excessive Fines Clause Issue.

Lippert argues that summary judgment was improper because a civil penalty equal to ten times the kickbacks paid to him personally is an unconstitutionally excessive fine. The Excessive Fines Clause "limits the government's power to extract

payments . . . as punishment for some offense." Bajakajian at *5. At issue in Bajakajian was a *criminal* forfeiture under 18 U.S.C. § 982(a)(1). By relying on Austin v. United States, 509 U.S. 602, 610 (1993), for its analysis of when a government penalty is "punishment," the Court reaffirmed that the Excessive Fines Clause also applies to *civil* penalties and forfeitures that are punitive in nature. Austin held that even a remedial civil sanction is subject to the Excessive Fines Clause if it serves "in part to punish." 509 U.S. at 610. For this proposition, Austin relied heavily on the now discredited Double Jeopardy Clause analysis of Halper. We infer from the citation to Austin in Bajakajian that Halper's emphasis on punishment, while rejected as a basis for applying the Double Jeopardy Clause, remains appropriate for applying the Excessive Fines Clause. That inference is supported by the fact that the Court in Hudson commented, "some of the ills at which Halper was directed are addressed by other constitutional provisions," citing as one example the Excessive Fines Clause as applied in Austin. 118 S. Ct. at 495.

If we apply Austin's expansive test for identifying punishment, it seems apparent that the civil penalty authorized in 41 U.S.C. § 55(a)(1) is punitive because it is intended to serve in part as punishment. The sanction is labeled a civil "penalty," that penalty may include an amount per occurrence that is indistinguishable from a civil "fine," and the legislative history confirms that the penalties authorized "are reasonable in light of the serious harm caused the government by kickbacks *and the need to prevent such misbehavior.*" H.R. Rep. No. 99-964, 1986 U.S.C.C.A.N. at 5972 (emphasis added).[2]

---

[2]Although a per occurrence penalty was not imposed on Lippert, analysis of the statutory penalty "on its face" seems appropriate. However, this is an open issue. In Hudson, the Supreme Court held that a statutory sanction must be analyzed on its face for Double Jeopardy Clause purposes because of the need to determine before trial whether that Clause bars the government from *attempting* a second punishment. 118 S. Ct. at 495. The Excessive Fines Clause sweeps less broadly; it prohibits an excessive fine from being "imposed," an inquiry that cannot be made until a specific "fine" has been imposed. Nonetheless, facial analysis of whether a purported civil penalty is punishment for Excessive Fines Clause purposes is desirable because it

On the other hand, there is a strong conflicting signal from Bajakajian.  After concluding that the criminal forfeiture at issue was punishment, the Court turned to the question whether the forfeiture was an excessive fine.  In answering that question affirmatively, the majority distinguished many long-standing customs forfeiture statutes, including statutes authorizing the "forfeiture" of monetary penalties proportioned to the value of goods.  Those forfeitures, the Court explained, "serv[ed] the remedial purpose of reimbursing the Government for the losses accruing from the evasion of customs duties," without discussing whether they were also in part punitive.  Bajakajian at \*11.  The four dissenters in Bajakajian complained that the majority "treats many fines as 'remedial' penalties even though they far exceed the harm suffered. . . . In the majority's universe, a fine is not a punishment even if it is much larger than the money owed.  This confuses whether a fine is excessive with whether it is a punishment."  Id. at \*12.  If the Bajakajian dissenters have properly construed the majority opinion, then civil penalties imposed under 41 U.S.C. § 55(a)(1) may not be subject to the Excessive Fines Clause at all, because like customs forfeitures they serve the remedial purpose of reimbursing the government for losses accruing from kickbacks.

The issue whether the Excessive Fines Clause applies to Anti-Kickback Act civil penalties is important, and we are not certain how the Supreme Court will resolve it.  But we need not hazard an answer in this case because we conclude that, even if the Clause applies, the civil penalty imposed on Lippert is not constitutionally excessive.  In the first place, the district court did not impose the $10,000 per occurrence penalty -- the portion of the statute that looks most like a fine -- but only a penalty equal to two times the amount of the kickbacks.  This is a time-honored form of compensatory

---

enables Congress to legislate more knowledgeably.  On balance, we conclude that whether the Excessive Fines Clause applies to a type of civil penalty should be based on a facial evaluation of the statute.  If the Clause applies, a court must then determine whether the particular fine at issue is constitutionally excessive.

remedy. "[T]he Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as . . . a fixed sum plus double damages, without being deemed to have imposed a . . . punishment." Halper, 490 U.S. at 446; see One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237 (1972); Stockwell v. United States, 80 U.S. 531, 546-47 (1871); United States v. Brekke, 97 F.3d 1043, 1048-49 (8th Cir. 1996), cert. denied, 117 S. Ct. 1281 (1997) (False Claims Act treble damages are "compensatory rather than punitive").

Second, the fact that Lippert's civil penalty was based upon kickbacks paid to C.B. Forms, as well as kickbacks paid to Lippert, does not make the penalty less compensatory to the government. Nor does it render the penalty grossly disproportional to the gravity of Lippert's offense -- he procured all the kickbacks and managed the C.B. Forms business. Finally, in the case of fines, as opposed to forfeitures, the defendant's ability to pay is a factor under the Excessive Fines Clause. See United States v. Hines, 88 F.3d 661, 664 (8th Cir. 1996); see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 289 (1989) (O'Connor, J., dissenting) (after the Magna Carta, amercements, the precursors of civil fines, were reduced "in accordance with the party's ability to pay"); United States v. Emerson, 107 F.3d 77, 80-81 (1st Cir.), cert. denied, 118 S. Ct. 61 (1997). However, Lippert did not raise this issue in the district court, and his Presentence Report in the criminal case reported a net worth of $501,015.15.

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.