#26983-a-LSW

**2014 S.D. 79**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

FRANKIE LEE WEBB,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOSEPH NEILES
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


MOLLY C. QUINN
Office of the Minnehaha County
  Public Defender
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 6, 2014

OPINION FILED **11/05/14**

#26983

WILBUR, Justice

[¶1.] Frankie Webb pleaded guilty to possession of a controlled drug or substance. The circuit court sentenced Webb to five years in prison with two years suspended. One of the conditions of the suspended sentence was that Webb pay a $10,000 fine. Webb appeals and argues that the $10,000 fine was grossly disproportionate to the offense in violation of the Eighth Amendment. We affirm.

**Background**

[¶2.] On September 30, 2013, law enforcement received notification that an individual by the name of Frankie Webb was selling illegal drugs near The Banquet[1] in Sioux Falls. Law enforcement located Webb at The Banquet. Webb consented to a search of his person, his car, and his cell phone. The police found a pill bottle with Webb's name on it that contained three bags of marijuana, seven hydrocodone pills, and ten alprazolam pills. A search of Webb's cell phone revealed that he was engaged in buying and selling drugs. Law enforcement subsequently arrested Webb.

[¶3.] Webb was on parole at the time of his arrest. He indicated that he was currently living at the Union Gospel Mission—a homeless shelter—and had recently been approved for Social Security disability benefits. Webb further indicated that he owned a recently-purchased vehicle. The record, however, is silent as to the value of the vehicle and whether he owned any other assets.

---

1. The Banquet is a facility that provides meals to those in need.

[¶4.] The State filed an indictment charging Webb with two counts of possession of a controlled drug or substance, possession of two ounces or less of marijuana, and possession of or use of drug paraphernalia. SDCL 22-42-5; SDCL 22-42-6; SDCL 22-42A-3. Webb had three prior felony convictions at the time of his arrest—possession of a controlled substance in 2006, aggravated burglary in 2002, and distribution of crack cocaine in 1999. Because of these prior convictions, the State filed a Part II habitual offender information.

[¶5.] Webb entered into a plea agreement whereby he agreed to plead guilty to possession of a controlled drug or substance—to wit Hydrocodone—which is classified as a Schedule II controlled substance. A violation of this offense is a Class 5 felony and carries a maximum sentence of five years imprisonment and a fine of $10,000. SDCL 22-42-5; SDCL 22-6-1. The State agreed to cap the sentence at three years of imprisonment. The State further agreed to dismiss the other three charges and the Part II information.

[¶6.] The circuit court conducted a plea and sentencing hearing. The court noted that although the plea agreement contemplated three years imprisonment, the court had discretion to sentence Webb to five years imprisonment and then suspend two years; in addition, the court could impose the maximum fine of $10,000. The court considered Webb's criminal history and commented that, as an habitual offender, Webb could have potentially faced up to life imprisonment or up to fifteen years imprisonment.[2] The court then stated:

---

2. The parties disputed whether the aggravated burglary in 1999 constituted a crime of violence. This determination would control whether Webb faced
(continued . . .)

> I find the conduct as described by the reporting party to be pretty outrageous, and if all of that were true then the [S]tate would have charged you with distribution, and I would have sentenced you to the maximum possible sentence that I could impose. It is not acceptable to the court under any circumstances that someone distribute controlled substances in our community. And if you do, then you are going to look at a pretty substantial sentence. As it is, I have you here only on a possession charge, which is obviously less serious. . . . [E]ven though the [S]tate has dismissed the Part Two Information, I am not going to ignore those prior felony convictions. I am still entitled to take those into consideration.

The court sentenced Webb to five years of imprisonment with two years suspended and fined him $10,000. The two suspended years of imprisonment were conditioned on Webb paying the $10,000 fine. The court did not make a finding and the record

---

(. . . continued)

fifteen years imprisonment or lifetime imprisonment as an habitual offender. Under SDCL 22-7-8:

> If a defendant has been convicted of three or more felonies in addition to the principal felony and one or more of the prior felony convictions was for a *crime of violence* as defined in subdivision 22-1-2(9), the sentence for the principal felony shall be enhanced to the sentence for a Class C felony.

(Emphasis added). Alternatively, under SDCL 22-7-8.1, the statute provides in pertinent part:

> If a defendant has been convicted of three or more felonies in addition to the principal felony and none of the prior felony convictions was for a crime of violence . . . the sentence for the principal felony shall be enhanced by two levels . . . .

Thus, under the Part II information, if Webb's aggravated burglary was deemed a crime of violence, then Webb's principal felony would be enhanced to a Class C felony. A Class C felony carries a maximum penalty of up to life imprisonment and a fine of up to $50,000. If Webb's aggravated burglary was not deemed a crime of violence, then Webb's principal felony charge would be enhanced to a Class 3 felony, which carries a maximum sentence of up to fifteen years imprisonment and a fine of up to $30,000.

#26983

is silent as to whether Webb had the ability to pay the fine. Webb appeals and

raises the following issue for our review:

[¶7.] **Whether the $10,000 fine for possession of a controlled drug or substance is grossly disproportionate in violation of the Eighth Amendment prohibition on excessive fines.**

## Standard of Review

[¶8.] An alleged infringement of a constitutional right is an issue of law to

be reviewed under the de novo standard. *State v. One 1995 Silver Jeep Grand*

*Cherokee*, 2006 S.D. 29, ¶ 3, 712 N.W.2d 646, 649 (citing *State v. Krahwinkel*, 2002

S.D. 160, ¶ 13, 656 N.W.2d 451, 458). Under this standard, "no deference is given to

the circuit court's determination, and the decision is fully reviewable by this Court."

*Id.* (citing *Thieman v. Bohman*, 2002 S.D. 52, ¶ 10, 645 N.W.2d 260, 262).

## Analysis

[¶9.] Webb argues that the $10,000 fine imposed by the circuit court

constituted an "excessive fine" in violation of the United States and South Dakota

Constitutions because the fine was grossly disproportionate to the offense

committed. Webb further argues that the circuit court inappropriately failed to

consider his ability to pay the fine. As a result, Webb requests that this Court

remand the case for a new sentencing hearing.

[¶10.] Both the Eighth Amendment to the United States Constitution and

Article VI, § 23, of the South Dakota Constitution provide that "excessive bail shall

not be required, nor excessive fines imposed, nor cruel and unusual punishment

inflicted." The purpose of the Excessive Fines Clause is to limit "the government's

power to extract payments, whether in cash or in kind, as punishment for some

-4-

offense." *Austin v. United States*, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 2805, 125 L. Ed. 2d 488 (1993) (emphasis omitted) (internal quotation marks omitted). The Excessive Fines Clause "protects against fines that are grossly disproportionate to the offense." *Krahwinkel*, 2002 S.D. 160, ¶ 38, 656 N.W.2d at 464. A criminal fine is not grossly disproportionate if it bears "some relationship to the gravity of the offense that it is designed to punish." *Id.* The gross disproportionality standard is only applicable in the "exceedingly rare and extreme case." *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S. Ct. 1166, 1173, 155 L. Ed. 2d 144 (2003) (internal quotation marks omitted).

[¶11.] This is the first instance in which we have addressed the Excessive Fines Clause as it applies to a criminal fine. We have previously addressed the Excessive Fines Clause as it applies to civil forfeitures and civil fines. *See One 1995 Silver Jeep Grand Cherokee*, 2006 S.D. 29, 712 N.W.2d 646 (civil forfeiture); *Krahwinkel*, 2002 S.D. 160, 656 N.W.2d 451 (civil fine). In *One 1995 Silver Jeep Grand Cherokee*, we applied a two-pronged approach for assessing gross disproportionality. 2006 S.D. 29, ¶ 5, 712 N.W.2d at 650 (citing *United States v. Dodge Caravan Grand SE*, 387 F.3d 758, 763 (8th Cir. 2004)). "First, the claimant must make a prima facie showing of gross disproportionality; and, second, if the claimant can make such a showing, the court considers whether the disproportionality reaches such a level of excessiveness that in justice the punishment is more criminal than the crime." *Id.* (internal quotation marks omitted).

[¶12.]     In order to make a prima facie showing of gross disproportionality, we have said that, in the context of civil forfeitures and civil fines, particular attention must be given to a number of factors.  *See id.* ¶ 8, 712 N.W.2d at 650; *Krahwinkel*, 2002 S.D. 160, 656 N.W.2d 451.  Accordingly, we find it instructive to consider certain factors in determining whether the $10,000 criminal fine in this case is grossly disproportionate to the offense.  The list of factors is not exhaustive and, "in weighing these factors, mathematical exactitude in the analysis is not required." *One 1995 Silver Jeep Grand Cherokee*, 2006 S.D. 29, ¶ 8, 712 N.W.2d at 650 (quoting *In re Property Seized from Terrell*, 639 N.W.2d 18, 21 (Iowa 2002)) (internal quotation marks omitted); *see also Lockyer*, 538 U.S. at 72, 123 S. Ct. at 1173 (acknowledging that the United States Supreme Court "cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality").

[¶13.]     One of the primary considerations for assessing gross disproportionality should necessarily be the Legislature's judgment about the appropriate punishment for the offense.  *See One 1995 Silver Jeep Grand Cherokee*, 2006 S.D. 29, ¶ 8, 712 N.W.2d at 651 (stating that "[c]riminal fines . . . reflect judgments made by the legislature about the appropriate punishment for an offense"); *Graham v. Florida*, 560 U.S. 48, 71, 130 S. Ct. 2011, 2028, 176 L. Ed. 2d 825 (2010) (recognizing that "[c]riminal punishment can have different goals, and choosing among them is within a legislature's discretion"); *United States v. Bajakajian*, 524 U.S. 321, 336, 118 S. Ct. 2028, 2037, 141 L. Ed. 2d 314 (1998) (acknowledging that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature"); *Solem v. Helm*, 463 U.S. 277, 290,

103 S. Ct. 3001, 3009, 77 L. Ed. 2d 637 (1983) (stating that "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes"). This consideration, however, is not dispositive because a fine that falls within the statutory limits may still violate the Eighth Amendment and South Dakota Constitution's prohibition of grossly disproportionate punishment. *See One 1995 Silver Jeep Grand Cherokee*, 2006 S.D. 29, ¶¶ 8-11, 712 N.W.2d at 650-52. Nonetheless, a criminal fine that falls within the statutory limits is almost certainly not excessive. *See id.* ¶ 8, 712 N.W.2d at 651.

[¶14.] In enacting SDCL 22-42-5, the Legislature determined that the appropriate punishment for possession of a controlled Schedule II substance is a Class 5 felony, which carries a penalty of up to five years imprisonment and up to a $10,000 fine, or both. This penalty is consistent with the punishments for similar controlled substance offenses found within SDCL chapter 22-42. The Legislature has long recognized the negative impact that drug related offenses have on our society, and the punishments for these offenses reflect that consideration. Here, Webb was in possession of illegal drugs, and as the factual basis indicated, he was also engaged in buying and selling those drugs. SDCL 22-42-5 was enacted to curb exactly this type of conduct. Consequently, because Webb's $10,000 fine falls within the statutory range of SDCL 22-6-1, the criminal fine imposed by the circuit court is almost certainly not excessive. *See One 1995 Silver Jeep Grand Cherokee*, 2006 S.D. 29, ¶ 8, 712 N.W.2d at 651.

[¶15.]    In assessing gross disproportionality, "a court must consider the entire circumstances surrounding the offense" that led to the criminal fine. *See One 1995 Silver Jeep Grand Cherokee*, 2006 S.D. 29, ¶ 11, 712 N.W.2d at 652. The factual basis for Webb's guilty plea established that Webb, while already on parole, was selling illegal drugs from his car outside of a facility providing meals to the needy. Webb had hydrocodone, alprazolam, three bags of marijuana, and drug paraphernalia in his possession.

[¶16.]    Webb was charged with three other drug related offenses in addition to the one to which he pleaded guilty. The circuit court acknowledged that the factual basis supported charging Webb with distribution as well, which carries a more severe punishment. In addition, as an habitual offender, Webb could have faced up to life imprisonment or up to fifteen years imprisonment under an enhanced sentence. The "entire circumstances" surrounding the offense do not suggest that the $10,000 fine was grossly disproportionate.

[¶17.]    Nonetheless, Webb argues that the fine is grossly disproportionate to the offense because he was not able to pay the fine. According to Webb, because the circuit court did not consider Webb's ability to pay the fine, this case should be remanded to the circuit court for a new hearing.

[¶18.]    Webb cites to two Eighth Circuit Court of Appeals cases in support of his argument that the circuit court should have considered his ability to pay the fine. *See United States v. Lippert*, 148 F.3d 974, 978 (8th Cir. 1998); *United States v. Hines*, 88 F.3d 661, 664 (8th Cir. 1996). Both of these cases involved a defendant who was convicted of a federal offense. *Hines* involved a criminal fine whereas

*Lippert* involved a civil fine. The court in *Hines* noted that the defendant's ability to pay the fine is indeed a "critical factor" because the United States Sentencing Commission Guidelines "mandate that this factor be considered . . . ." According to U.S.S.G. § 5E1.2(d)(2), the court shall consider "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources." This sentencing guideline applies to federal crimes and not to the state crime to which Webb pleaded guilty. Therefore, this argument is unpersuasive.

[¶19.] Notwithstanding the two Eighth Circuit Court of Appeals decisions, Webb contends that consideration of his ability to pay was necessary given the unique facts of this case. Webb points out that he was on Social Security disability, he was living at the Union Gospel Mission at the time of his arrest, and he is currently incarcerated and therefore unable to work. Furthermore, Webb notes that there is nothing in the record to determine his net worth. According to Webb, these facts should have alerted the court to consider his ability to pay the fine.

[¶20.] In support of this argument, Webb cites to *State v. Pettis*, 333 N.W.2d 717, 721 (S.D. 1983). In *Pettis*, the defendant pleaded guilty to distribution of marijuana. The circuit court sentenced Pettis to two years imprisonment and fined him $2,000, to be paid within 90 days. Pettis did not assert a constitutional challenge; this Court's analysis was limited to whether the probation condition was legal and reasonable. *See White Eagle v. State of S.D.*, 280 N.W.2d 659, 660 (S.D. 1979) (holding that "the only limitation on what conditions may be imposed are that they be legal and reasonable"). In our analysis, we noted that the circuit court

expressly determined that Pettis had the ability to pay the fine in 90 days. We further said that "Pettis was in a reprehensible business and should not be heard to complain of his conditions of probation. [Pettis's] probation gave him freedom at a cost." *Pettis*, 333 N.W.2d at 721.

[¶21.]     Webb argues that every factor that warranted the fine in *Pettis* is absent here. According to Webb, he does not have "freedom at a cost" because he does not possess the ability to pay the fine. This argument, however, loses sight of the question at issue—whether the criminal fine is grossly disproportionate to the offense committed. Here, Webb was charged with three other drug related offenses in addition to the one to which he pleaded guilty. He had two prior drug related felony convictions on his record as well as a felony conviction for aggravated burglary. As an habitual offender, he faced the potential of a much more severe sentence than the one he received. Moreover, the punishment he did receive falls within the statutory range prescribed in SDCL 22-6-1. Accordingly, Webb has failed to make a prima facie showing that the $10,000 fine is grossly disproportionate to the offense committed.

[¶22.]     We affirm.

[¶23.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.