*2002 SD 160*

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Anthony K. KRAHWINKEL, Defendant and Appellant.**

No. 22335.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 2002.

Decided Dec. 23, 2002.

Mark Barnett, Attorney General, Jason A. Glodt, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Ronald G. Schmidt, Rapid City, South Dakota, Attorney for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Anthony Krahwinkel was convicted of violating South Dakota's overweight motor vehicle statutes and was assessed double civil penalties. He appeals on several issues, challenging the constitutionality and applicability of the provisions of SDCL ch 32–22. He also appeals his conviction for violating SDCL 32–22–57.1, by having a lift axle pressure control device located inside the cab of his vehicle. We affirm.

### Background

[¶ 2.] On February 12, 2000, Anthony Krahwinkel was driving a 1994 Mack truck-tractor registered in Montana in combination with a Sieb trailer registered in Wyoming. The trailer was loaded with a Kamatsk excavator. Soon after pulling off U.S. 14A onto Interstate 90, Krahwinkel was stopped by Motor Carrier Enforcement Officer Larry Bryant near milepost

31 in Meade County. Officer Bryant directed Krahwinkel to proceed to the Sturgis Department of Transportation to weigh the tractor-trailer combination, using portable Haenni wheel load scales.

[¶ 3.] Before the weighing, the scales had been properly tested and certified. Krahwinkel's tractor-trailer combination had eight axles.[1] The individual axle weights were as follows:

| | |
|---|---|
| Axle 1 | 10,900 pounds |
| Axle 2 | 7,900 pounds |
| Axle 3 | 33,500 pounds |
| Axle 4 | 39,000 pounds |
| Axle 5 | 18,700 pounds |
| Axle 6 | 19,000 pounds |
| Axle 7 | 18,700 pounds |
| Axle 8 | 18,700 pounds |

The gross weight of Krahwinkel's tractor-trailer was 166,400 pounds.

[¶ 4.] To determine the legality of Krahwinkel's tractor-trailer gross weight, Officer Bryant applied the overweight formula, commonly known as the "bridge formula," codified in SDCL 32–22–16.1. The bridge formula is found in Title 23 of the United States Code § 127, which sets the allowable vehicle weights on the Interstate highways. South Dakota's Interstate highway funds are contingent upon the enforcement of the weight limits set forth in the United States Code. 23 USC § 127. The bridge formula was designed to protect bridges from catastrophic overloads by restricting the weight of each of a vehicle's axle groupings and by limiting vehicle gross weight. The Motor Carrier handbook summarizes SDCL 32–22–16.1 and includes a reference table, which permits operators to calculate the maximum gross weight allowable, without having to actually solve the formula codified in the statute.

[¶ 5.] The bridge formula restricts the gross weight of a vehicle traveling on the Interstate Highway System to 80,000 pounds. This gross weight limitation is codified in both SDCL 32–22–16(3) and 23 USC § 127. Although South Dakota claims "grandfather" rights and may supersede the 80,000 pound limitation, it cannot permit vehicles to exceed the maximum gross weight allowed under the bridge formula.

[¶ 6.] To compute the maximum allowable gross weight under the bridge formula, Officer Bryant measured the distance between Axles 1 and 8 which totaled 87 feet and counted the number of axles (eight) on Krahwinkel's tractor-trailer. Under the bridge formula, the maximum gross weight for a vehicle with eight axles with 87 feet between the foremost axle and the rearmost axle is 115,500 pounds. Since the actual weight of Krahwinkel's tractor-trailer was 166,400 pounds, the vehicle was 50,900 pounds over the legal gross weight limit allowed by South Dakota law. Officer Bryant cited Krahwinkel for a gross weight violation of 50,900 pounds under SDCL 32–22–16.

[¶ 7.] Although Krahwinkel did not have the proper overweight permit which would have allowed him to carry the maximum allowable load (115,500 pounds) under the bridge formula, Officer Bryant chose not to use 80,000 pounds as a base weight.[2] Instead, he used the bridge formula to determine the maximum allowable

---

1. Under SDCL 32–22–16(1), the legal weight limit on any one axle is 20,000 pounds. The legal weight limit on any tandem axle is 34,000 pounds. SDCL 32–22–16(2).

2. The circuit court asked Officer Bryant why he did not calculate the legal weight at 80,000 pounds because Krahwinkel was over that limit on the Interstate. Officer Bryant responded that he considered it as more like a permit violation and usually does not charge for a violation of the 80,000 pound limit on the Interstate because it can be taken care of with a $2.00 permit.

weight that Krahwinkel's vehicle could have been permitted to carry (115,500 pounds). Officer Bryant could have ignored the bridge formula and just issued a gross overweight violation using the base weight of 80,000 pounds. Under those circumstances, Krahwinkel could have been cited for having 86,400 pounds over the weight limit rather than 50,900 pounds.

[¶ 8.] Under SDCL 32–22–55, Krahwinkel was penalized 37.5 cents per pound for 50,900 pounds for a total of $19,087. In addition, the penalty was doubled in accord with SDCL 32–22–56.[3] In sum, Krahwinkel was penalized $38,175 in addition to an initial fine of $133.

[¶ 9.] In addition to the SDCL 32–22–16.1 violation, Krahwinkel was cited under SDCL 32–22–57.1 for having a lift axle pressure control device located inside the cab of his vehicle. Krahwinkel testified that the location of the pressure control device for the variable load lift axle in the tractor-cab is legal in Montana, where the truck is licensed and registered. He further stated that the pressure control setting for the variable load lift axle was approximately thirty pounds. He explained, however, that with such high pressure on the lift axle, the truck frame could possibly break the motor mount. Therefore, it was necessary to reduce the pressure or raise the lift axle before making a turn. Accordingly, Krahwinkel reduced the pressure on the lift axle to approximately five pounds before he turned into the Sturgis Department of Transportation

yard. There, Officer Bryant ordered Krahwinkel not to make any changes. Thus, the lift axle pressure was left at about five pounds.[4]

[¶ 10.] The purpose of the pressurized lift axle is to spread the weight of the load over the additional axles and pneumatic tires. At approximately thirty pounds of pressure, the weight on Axles 2, 3, and 4 of Krahwinkel's tractor-trailer combination should be approximately the same. Axle 2, the variable lift axle, only weighed 7,900 pounds. However, the other two axles in the group, Axles 3 and 4, weighed 33,500 pounds and 39,000 pounds, respectively.

[¶ 11.] The circuit court found Krahwinkel guilty of violating SDCL 32–22–16 and 32–22–16.1, and in accordance with SDCL 32–22–55 and –56 imposed a penalty of $38,175 plus a fine of $100 and costs of $33 for the gross overweight violation on the whole vehicle based on the cumulative weights of Axles 1 through 8.[5] Further, the circuit court found Krahwinkel guilty of violating SDCL 32–22–57.1, concerning the lift axle control device and imposed a fine of $100 and costs of $33.

[¶ 12.] Krahwinkel appeals these penalties, fines, and costs. He raises the following issues on appeal: (1) "Whether the State erroneously charged Krahwinkel for a 'gross weight' violation of § 32–22–16(3) based on the whole vehicle (i.e., the cumulative weight of all eight axles on the vehicle) as opposed to a 'group' of axles constituting an overweight part of the whole

3. This statute has since been repealed. *See* footnote 13.

4. Officer Bryant stated that he did not check the lift axle pressure gauge when he stopped the truck and did not ask Krahwinkel what the lift axle pressure was at the time and place of the stop.

5. Krahwinkel was cited for the following violations:

(1) SDCL 32–22–16.1 (overweight on Axles 1–8—Ticket No. 13999);

(2) SDCL 32–22–57.1 (lift axle in cab—Ticket No. 60201);

(3) SDCL 32–22–52 (oversize load—Ticket No. 60202); and

(4) SDCL 32–9–14 (overweight/no commercial vehicle certificate—Ticket No. 14000).

vehicle." (2) "Whether the overweight provisions of SDCL ch 32–22 are facially unconstitutional because of unequal penalties for identical violations contrary to Art. VI, § 18 of the South Dakota Constitution, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." (3) "Whether due to changed circumstances since this Court's divided opinion in *State v. Feiok*, 364 N.W.2d 536 (S.D.1985), §§ 32–22–55 and –56 must be deemed so punitive either in purpose, or in effect as to negate the Legislature's intention to impose purely a civil penalty in light of a $38,175 civil fine and other factors not considered by this Court in its previous decision." (4) "A fine/penalty of $38,175 for a single Class 2 misdemeanor violation is so grossly excessive, and/or manifestly disproportionate to the crime as violative of the due process prohibition against the taking of property under South Dakota Constitution Art. VI, § 2, and the Fourteenth Amendment to the Constitution of the United States; and/or additionally, contrary to the prohibition against excessive fines in South Dakota Constitution Art. VI, § 23 and the Eighth Amendment of the Constitution of the United States." (5) "Chapter 32–22 overweight provisions are facially unconstitutional as violative of the void-for-vagueness and/or overbreadth doctrines of due process embodied in South Dakota Constitution Art. VI, § 2 and the Fourteenth Amendment to the Constitution of the United States." (6) "Whether the double penalty provisions of § 32–22–56 are applicable." (7) "Whether the Circuit Court erred in finding Krahwinkel guilty of violating § 32–22–57.1 for having the lift axle control in the cab of the truck as a matter of statutory construction since the statute expressly applies only to vehicles 'regis-

tered in South Dakota' in light of Krahwinkel's vehicle being registered in Montana."

### Standard of Review

[¶ 13.] We examine statutory construction and constitutional challenges de novo. *State v. Barton*, 2001 SD 52, ¶ 8, 625 N.W.2d 275, 278. The primary purpose of statutory construction is to ascertain the intent of the law. *Id.* Intent is ordinarily found by examining the express language of the statute. *Faircloth v. Raven Industries, Inc.*, 2000 SD 158, ¶ 6, 620 N.W.2d 198, 201. We therefore defer to the text where possible. *Id.* We read statutes as a whole along with the enactments relating to the same subject. *Kayser v. South Dakota State Elec. Comm'n*, 512 N.W.2d 746, 747 (S.D.1994) (citations omitted). We assume that the Legislature intended that no part of its statutory scheme be rendered mere surplusage. *Nat'l Farmers Union Prop. and Cas. Co. v. Universal Underwriters Ins. Co.*, 534 N.W.2d 63, 65 (S.D.1995) (citing *Revier v. School Bd. of Sioux Falls*, 300 N.W.2d 55, 57 (S.D.1980)); 2A Norman J. Singer, Sutherland Statutory Construction § 46.07, 205 (6th ed 2000). Likewise, when an asserted error implicates an infringement of a constitutional right, we employ a de novo standard of review. *State v. Dillon*, 2001 SD 97, ¶ 12, 632 N.W.2d 37, 43.

### Analysis and Decision

#### 1. Gross Weight Violation

[¶ 14.] Krahwinkel argues that he was "improperly charged" for a gross weight violation under SDCL 32–22–16. He maintains that the term "group" applies only to inner axle group weight violations and not to a group of total axles.[6] We find

---

**6.** "Group" is defined as "1. An assemblage of ... objects gathered or located together; ...

3. A number of individuals or things consid-

his argument unpersuasive. Krahwinkel's vehicle had a total gross weight of 166,400 pounds. Because he was traveling on the Interstate, SDCL 32–22–16 restricted his weight to 80,000 pounds. However, Officer Bryant opted to use the "bridge" formula in SDCL 32–22–16.1 [7] to calculate Krahwinkel's maximum allowable weight.[8]

[¶ 15.] SDCL 32–22–16(3) provides that no motor vehicle may have a weight "in excess of the maximum weight on *two or more consecutive axles* as determined by the formula detailed in § 32–22–16.1." (Emphasis added.) The bridge formula does not limit "two or more consecutive axles" to groups of inner-axles within the two outermost axles on a vehicle.

[¶ 16.] Several jurisdictions have had an opportunity to address this question. Under a similar bridge formula statute, the Illinois Supreme Court determined what constituted a weight violation under the terms "group" and *"two or more consecutive axles." People v. Conlan,* 189 Ill.2d 286, 244 Ill.Dec. 350, 725 N.E.2d 1237, 1242 (2000) (emphasis added). The *Conlan* court ruled that if the extreme axles on a vehicle, front and rear, are being considered, and the total weight exceeds allowable limits, a gross weight violation has occurred in the traditional sense. *Id.* at 1242. If, on the other hand, excessive weight exists over consecutive inner axles, then what is apparently referred to as an "inner bridge" violation has occurred. *Id.* Here, Krahwinkel had a traditional gross weight violation.

[¶ 17.] SDCL 32–22–16.1 provides that "[f]or the purposes of § 32–22–16 the maximum *gross weight on a group of two or more consecutive axles* " shall be determined by a formula, which many courts refer to as the "bridge" formula. (Emphasis added.) It is apparent that the Legislature intended the term "group" to encompass a variety of axle configurations that can exist on a vehicle. This can be deduced by the Legislature's inclusion of the term "gross weight" in SDCL 32–22–16.1. Gross weight means the total weight of the vehicle. *State v. Young,* 2001 SD 76, ¶ 6, 630 N.W.2d 85, 87–88. In calculating the total weight of a vehicle, all the axles would be included. Therefore, by implication, we conclude that a "group" of axles can encompass all the axles on a vehicle to calculate a gross weight violation or a "group" can encompass any "two or more consecutive axles," which constitute a weight violation. *See Commonwealth v. Byers,* 35 PaD & C3d 470, 474, n1, 1984 WL 2506 (Pa.Com.Pl.1984) ("While the statute uses the language 'two or more consecutive axles' it is apparent that this language is referring to all the axles. At

---

ered together because of similarities." American Heritage Dictionary 579 (2d ed 1982).

**7.** SDCL 32–22–16.1 entitled "Formula for weight on group of consecutive axles." provides:

For the purposes of § 32–22–16 the maximum gross weight on a group of two or more consecutive axles allowable on a public highway shall be determined by the following formula:

$$W = 500 [LN/(N\ 1) + 12N + 36]$$

In applying the above formula, "W" equals the overall gross weight on any group of two or more consecutive axles to the nearest five hundred pounds, "L" equals the distance measured longitudinally to the nearest foot from the foremost axles to the rearmost axle in a group of two or more consecutive axles, and "N" equals the number of axles in group under consideration.

**8.** Nearly every state has a "bridge formula" statute similar to SDCL 32–22–16.1. The state bridge formula statutes derive from 23 USC § 127, which ties the receipt of federal highway funds to enforcement of vehicle weight limitations and provides a formula to calculate weight violations. 23 USC § 127.

least in this case all axles were used in the calculation."). We find no error here.

## 2. Constitutionality of SDCL ch 32–22

 [¶ 18.] We next consider Krahwinkel's contention that the overweight statutes violate his right to equal protection of the laws under our state and federal constitutions. At the outset, we note that "[a]ny legislative act is accorded a presumption in favor of constitutionality and that presumption is not overcome until the act is clearly and unmistakably shown beyond a reasonable doubt to violate fundamental constitutional principles." *Americana Healthcare Center v. Randall*, 513 N.W.2d 566, 572 (S.D.1994). Moreover, classification is primarily for the Legislature and we will not interfere "unless the classification is clearly arbitrary and unreasonable." *Berens v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 80 S.D. 168, 120 N.W.2d 565, 570–71 (1963).

 [¶ 19.] The equal protection clauses embodied in the Fourteenth Amendment to the United States Constitution and in Article VI, § 18 of the South Dakota Constitution guarantee equal protection of the laws to all persons. The statutes in SDCL ch 32–22 do not encompass a fundamental right, a suspect classification, or an intermediate scrutiny classification; thus, the rational basis test is applicable.[9] In *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331 (1975), this Court set forth a two-prong test to determine, under rational basis analysis, whether a statute violates the constitutional right to equal protection under the laws. The first part of the test is whether the statute sets up arbitrary classifications among various persons subject to it. *Id.* at 333. The second part of the test is whether there is a rational relationship between the classification and some legitimate legislative purpose. *Id.*

 [¶ 20.] Under the first prong, we look to see if the overweight statutes of SDCL ch 32–22 apply equally to all people. *Lyons v. Lederle Laboratories, A Div. of American Cyanamid Co.*, 440 N.W.2d 769, 771 (S.D.1989) (citing *Janish v. Murtha*, 285 N.W.2d 708, 709 (S.D.1979)). Krahwinkel asserts that the classifications are wholly arbitrary and not related to protecting roads from damage because the Legislature makes a distinction between the types of loads, the nature of certain vehicles, and the vehicles that receive permits. Essentially, he argues that weight is weight and that identical amounts of weight damage the road equally, regardless if that weight is exerted by a construction vehicle, an agricultural vehicle, an emergency vehicle, or a sludge vehicle.

 [¶ 21.] Equal protection of law requires that the rights of every person be governed by the same rule of law, *under similar circumstances*. *Eischen*, 363 N.W.2d at 201; *Meidinger*, 89 S.D. 412, 233 N.W.2d at 333–34; *State v. King*, 82 S.D. 514, 149 N.W.2d 509, 510 (1967) (emphasis added). Equal protection does not require that all persons be treated identically, but it does require that distinc-

---

9. In both federal and state equal protection analysis, there are three tests to be applied depending upon the nature of the interest involved. First, the strict scrutiny test applies only to fundamental rights or suspect classes. *Budahl v. Gordon and David Associates*, 287 N.W.2d 489 (S.D.1980). Second, the intermediate or substantial relation test applies to legitimacy and gender. *See State ex rel Wieber v. Hennings*, 311 N.W.2d 41, 42 (S.D.1981); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Third, the rational basis test applies to all other classes. *Eischen v. Minnehaha County*, 363 N.W.2d 199, 201 (S.D.1985) (citations omitted).

tions have some relevance to the purpose for which classifications are made. *Meidinger*, 89 S.D. 412, 233 N.W.2d at 334. Krahwinkel incorrectly premises his argument on the type of vehicle being operated, on the type of load being hauled, and on whether the vehicle operator receives a permit. Rather, the proper focus is on the identity of the drivers and their similar circumstances. SDCL ch 32–22 applies equally to all vehicle operators in similar circumstances. Any other persons who would have been driving Krahwinkel's vehicle, regardless of their occupations, would have been subject to the same fines and penalties as Krahwinkel.

[¶ 22.] The classifications in SDCL ch 32–22 are not based on who operates the vehicle. Instead, the classifications in SDCL ch 32–22 are based on loads hauled: agricultural commodities and livestock, farm implements, logs, and solid waste. Further, classifications are also made for vehicle type: farm machinery, anhydrous ammonia tank trailers, fire vehicles, municipal sludge vehicles, tow trucks, and wreckers. In addition, SDCL ch 32–22 contains classifications for larger vehicles, which serve communities without a railroad.

[¶ 23.] With regard to Krahwinkel's contention that the classification of a permit versus a non-permit vehicle is arbitrary and capricious, we think Krahwinkel has failed to show any arbitrary classification.[10] The permitting process set forth in SDCL ch 32–22 applies equally to all classes similarly situated under the law-operators with permits are treated the same and operators without permits are treated the same. *Eischen*, 363 N.W.2d at 201; *Meidinger*, 89 S.D. 412, 233 N.W.2d at 333–34; *King*, 82 S.D. 514, 149 N.W.2d

at 510. Therefore, the first prong of the *Meidinger* test has not been satisfied. Moreover, Krahwinkel failed to provide authority for his argument that SDCL ch 32–22 is unconstitutionally arbitrary and capricious or violative of equal protection of the law as applied to permit versus non-permit vehicles. After reviewing the statutory scheme of SDCL ch 32–22, we conclude that the overweight statutes do not set up arbitrary classifications among persons similarly situated.

[¶ 24.] Having determined that no arbitrary classification exists, we nonetheless move to the second prong to determine whether there is a rational relationship between the classification and some legitimate legislative purpose. *Meidinger*, 89 S.D. 412, 233 N.W.2d at 333. The exceptions under SDCL ch 32–22 serve a legitimate purpose. Agriculture is a substantial sector of commerce in South Dakota. On several occasions, this Court has recognized the importance of agriculture to the general welfare. *Associated General Contractors of South Dakota, Inc. v. Schreiner*, 492 N.W.2d 916, 924 (S.D.1992); *Wheelon v. South Dakota Land Settlement Board*, 43 S.D. 551, 181 N.W. 359, 361 (1921). The agricultural exceptions provide farmers with minimal five and ten percent weight tolerances to reduce the burden on farmers and to facilitate agricultural activity. Some of the exceptions allow a weight tolerance for agricultural activities, such as hauling commodities from a combine to a point of unloading, hauling farm storage or livestock, and moving haystacks. Most of the agricultural commodities, whether grain, livestock, or hay, have variable weights and the loads are prone to shift, making it difficult for farmers to know the exact weight on each axle.[11] On

---

10. Krahwinkel did not seek to obtain a permit before he was cited.

11. For example, the weight of a hay bale may be significantly affected by moisture and the type of plant material (i.e. wheat straw or

the other hand, construction equipment has a fixed weight and remains stationary during transport allowing for a more accurate weight estimation.

[¶ 25.] We note that the Legislature has imposed several other restrictions on agricultural vehicles designed to minimize damage to highways. Among these limitations are distance and speed restrictions, travel limited to certain roads, season, and types of tires, with lighting, flagging, permitting, and most notably, weight and size restrictions. Most of these restrictions are not applicable to other motor carriers. Furthermore, there is nothing in the statutory scheme that shields agricultural carriers from overweight violations.

[¶ 26.] Serving a separate legitimate purpose, tow trucks and wreckers are allowed weight tolerances because they are used for emergencies, implicating public safety. Similarly, whether a vehicle receives a permit is rationally related to public safety and to the legitimate legislative purpose of protecting public roads from damage caused by overweight vehicles. *Meidinger*, 89 S.D. 412, 233 N.W.2d at 333–34. Specifically, there is more of a difference between operators who purchase a proper overweight permit and those who do not than just the purchase price of the permit. First, an operator must obtain authorization from the Division of Highway Patrol to obtain a permit to move an overweight vehicle. Second, the permit obtained by an operator is restricted to a single trip. SDCL 32–22–38. Third, the Highway Patrol designates the route that the operator must take for the single trip. Moreover, issuance of a permit is within the discretion of the Highway Patrol. For these reasons, we conclude that SDCL ch 32–22, as it relates to per-

mit and non-permit vehicles, is not unconstitutionally arbitrary and capricious and that it does not violate the equal protection guarantees.

[¶ 27.] We do not find the limited weight tolerance exemptions for certain industries which are vital to the economy and safety of the state to be arbitrary or in violation of equal protection laws. *See Dep't of Transp. v. Georgia Mining Association*, 252 Ga. 128, 311 S.E.2d 443, 446 (1984). These considerations constitute a legitimate legislative purpose, and we conclude that there is a rational relationship between this purpose and the classifications based upon industry and the nature and circumstances of the load.

[¶ 28.] In so holding, we are not alone. Many courts have held that overweight statutes are not facially discriminatory and do not violate equal protection guarantees. *Id.; State ex rel. Hjelle v. A Motor Vehicle, etc.*, 299 N.W.2d 557 (N.D.1980); *Dep't of Transp. v. Del–Cook Timber Co., Inc.*, 248 Ga. 734, 285 S.E.2d 913, 919 (1982) ("in the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality' "). We find no error here.

### 3. Excessively Punitive Civil Penalty

[¶ 29.] First, Krahwinkel maintains that the excessive fines for overweight vehicles are not civil in nature and requests that this Court reconsider its holding in *Feiok*, 364 N.W.2d 536. Recently, we re-

---

alfalfa) involved. Similarly, livestock may move around a trailer during transport alter-

ing the weight on each axle.

viewed our decision in *Feiok* regarding whether overweight truck fines are civil in nature. *Barton*, 2001 SD 52, 625 N.W.2d 275. In *Feiok*, after considering the seven factors set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), we held that the overweight fines were not so punitive as to negate the Legislature's intention to impose a civil penalty. *Barton*, 2001 SD 52 at ¶ 33, 625 N.W.2d at 282–83. Although it appears that we reaffirmed our holding of *Feiok* in *Barton*, we will nonetheless analyze whether the penalty for an overweight vehicle is civil or criminal in nature.

[¶ 30.] In *Feiok*, we outlined the analysis for determining whether a penalty is civil or criminal in nature. *State v. Barber*, 427 N.W.2d 375, 376 (S.D.1988). First, it must be determined whether the Legislature indicated an express or implied preference for one label or the other in establishing the penalizing mechanism. *Feiok*, 364 N.W.2d at 538. If this review indicates that the Legislature intended to establish a civil penalty, the second step is to determine whether the statutory scheme is so punitive either in purpose or in effect as to negate that intention and turn the civil penalty into a criminal penalty. *Id.* at 538–39.

[¶ 31.] Applying the first step of the analysis, we are convinced that the Legislature intended to establish a civil penalty in SDCL 32–22–55, in addition to the criminal penalty for overweight vehicles. In *Feiok*, we reached this conclusion for two reasons. First, well after the criminal penalty for overweight trucks was enacted in 1929, the predecessor statute to SDCL 32–22–55 was enacted and established a civil penalty for overweight vehicles in 1951. *Id.* at 539. Second, if the Legislature had intended that the sanctions provided by SDCL 32–22–55 be penal in nature, it would have reclassified the

violation of SDCL 32–22–16 from a Class 2 misdemeanor to a Class 1 misdemeanor or a felony. *Id.*

[¶ 32.] The next step in our analysis is to determine whether, despite the Legislature's intent to establish a civil penalty for overweight vehicles, the statutory scheme is so punitive in purpose or effect as to negate this intention. *Id.* at 540. When determining whether a penalty is punitive in nature, the seven factors to consider are:

(1) Whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Barton*, 2001 SD 52 at ¶ 33, n3, 625 N.W.2d at 282–83 (citing *Feiok*, 364 N.W.2d at 540 (quoting *Kennedy*, 372 U.S. at 168, 83 S.Ct. at 567–68, 9 L.Ed.2d at 661)). *See State v. Goffe*, 41 Conn.App. 454, 676 A.2d 1377 (1996) for an analysis of each of the above seven factors as applied to an overweight vehicle statute.

[¶ 33.] The *Feiok* court concluded that only the fifth and seventh factors were relevant. *Feiok*, 364 N.W.2d at 540. With respect to the fifth factor, whether the behavior to which the sanction imposed by SDCL 32–22–55 is already a crime, the Court noted that the Legislature may provide that one same act may result in both a civil and a criminal sanction. *Id.* (citing *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749

(1980)). Again, the substantial length of time (22 years) between the enactment of the criminal penalty and the enactment of the subsequent civil penalty (SDCL 32–22–55) repudiates the notion that the penalty in SDCL 32–22–55 is criminal in nature. *Feiok,* 364 N.W.2d at 540. Likewise, with respect to the seventh factor, whether the penalty is excessive in relation to the purpose assigned to it, the *Feiok* court found that the penalties authorized by SDCL 32–22–55, although certainly "not insubstantial," are not so clearly excessive as to bear no relationship to the purpose for which they are imposed. *Id.*

[¶ 34.] We find the reasoning in *Feiok* persuasive. We reaffirm its holding that the penalties of SDCL 32–22–55 are civil in nature. Although we recognize that the civil penalties are "not insubstantial," in most instances the Legislature is in a better position to discern the appropriate gradations for civil penalties.

·[¶ 35.] Second, Krahwinkel submits that it would be unreasonable to construe SDCL ch 32–22 to allow a civil penalty for an overweight vehicle, without proof of any actual damage, potentially leaving him subject to a later civil action for actual damages. Again, we have previously addressed this issue in *Feiok.* There, we held that the "imposition of a penalty based upon the amount by which a vehicle is overweight is a reasonable way for the state to police the [motor vehicle] weight restrictions." 364 N.W.2d at 540 (citing *Hjelle,* 299 N.W.2d 557). Further, this Court held in *Feiok,* that to accept a defendant's contention of requiring the state to demonstrate actual damage to a highway caused by an overweight vehicle before stopping it "would for all practical purposes render any statute imposing a civil cost penalty upon overweight vehicles unenforceable." *Feiok,* 364 N.W.2d at 540.

[¶ 36.] Other jurisdictions have also addressed this issue. The Supreme Court of North Dakota held that the operator of an overweight truck did not receive an unduly harsh fine when he was cited for driving one mile on a road under construction and no actual damage to the road was found. *Hjelle,* 299 N.W.2d at 563. Moreover, the North Dakota court ruled that the overweight penalty was for "extraordinary use of the highway, not for actual damage, and there is no burden on the state to prove actual damage." *Id.* Ultimately, the *Hjelle* court found it reasonable to assess an overweight civil penalty on a pro rata basis. *Id.*

[¶ 37.] We conclude that actual damage is not a condition precedent to the imposition of a civil penalty. In *Feiok,* we also held that the Class 2 misdemeanor penalty of SDCL 32–22–16 coupled with the mandatory additional penalty of SDCL 32–22–55 does not constitute double jeopardy. 364 N.W.2d at 540. Accordingly, we hold that Krahwinkel's criminal fine and civil penalties do not violate the constitutional provision against double jeopardy.

### 4. Grossly Excessive Penalty

[¶ 38.] The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." This guarantee protects against fines that are grossly disproportionate to the offense. *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The constitutional inquiry regarding excessive fines is proportionality: the amount of the fine must bear some relationship to the gravity of the offense that it is designed to punish. *Id.* at 622–23, 113 S.Ct. at 2812; *U.S. v. Ursery,* 518 U.S. 267, 283, 116 S.Ct. 2135, 2145, 135 L.Ed.2d 549 (1996). Furthermore, the Eighth Amendment proscription against excessive

fines applies to fines imposed by the government in civil actions. *Austin,* 509 U.S. at 610, 113 S.Ct. at 2806. The double civil penalty for an overweight violation imposed on Krahwinkel is not disproportionate when we consider the amount of money the State expends maintaining its highway system and protecting the safety of the public using those highways.

[¶ 39.] Jurisdictions addressing similar issues have held that the purposes of the overweight provisions are to protect the roads from damage and to insure the safety of the travelling public. *Goffe,* 676 A.2d at 1385; *Commonwealth v. Smith,* 409 Pa. 521, 187 A.2d 267, 270 (1963). Because overweight sanctions have the effect of deterring overweight violations, courts have found that strict civil sanctions are not excessive. *Id.; Goffe,* 676 A.2d at 1385. The reasons for so concluding are several: first, the courts considered the amount of money expended by the State to enforce these statutes. *Id.; Smith,* 187 A.2d at 270. Second, these courts reasoned that operators of overweight vehicles are chargeable with the knowledge of the graduated fine structure. *Id.* (the Legislature's decision to graduate and increase the amount of the fines "was not irrational or unreasonable, but on the contrary was quite sensible"); *Goffe,* 676 A.2d at 1385. Thus, keeping in mind the object to be accomplished and the importance of the public interest, these courts found that the overweight sanctions were not excessive. *Id.; Smith,* 187 A.2d at 270.

[¶ 40.] In *Feiok,* we considered whether the fines imposed for violations of SDCL ch 32–22 were unconstitutional as "excessive fines" and concluded that although the fines were certainly "not insubstantial," they were not so clearly excessive as to bear no relationship to the purpose for which they are imposed. 364 N.W.2d 536. Similarly, in *Barton,* it was argued that the increase in fines since the time of *Feiok,* should cause this Court to reconsider its previous ruling. *Barton,* 2001 SD 52, ¶ 33, 625 N.W.2d at 282–83. We stood by our *Feiok* ruling in *Barton,* affirming the defendant's $11,425 civil penalty for an overweight violation. *Id.* We reaffirm our holding in *Feiok* today.

[¶ 41.] Next, Krahwinkel argues that the penalties imposed by SDCL 32–22–55 and 32–22–56 constitute a "taking" under Art. VI, § 2 of the South Dakota Constitution and the Fourteenth Amendment to the United States Constitution. In *Cody v. Leapley,* 476 N.W.2d 257, 260 (S.D.1991), we said that "where the [L]egislature, in the implementation of its constitutional powers, provides for penalties, such as forfeitures, such action is not a taking of private property in a constitutional sense." The civil overweight penalty imposed on Krahwinkel, although not a forfeiture, is nonetheless a penalty imposed by the Legislature and is, therefore, not a taking of private property.

[¶ 42.] Finally, Krahwinkel contends that his rights to due process have been violated. Here the government is not depriving anyone of a vested liberty or property right without due process of law. Krahwinkel is entitled to argue the facts and dispute them before the court, as he has done. We conclude that he has been given all the process that is due to him in accord with the procedural safeguards afforded to him under SDCL 32–22–16. *See Feiok,* 364 N.W.2d at 541.

### 5. Vagueness and Overbreadth

[¶ 43.] Krahwinkel argues that the provisions of SDCL ch 32–22 are unconstitutionally vague and violate due process. A statute challenged as unconstitutional enjoys a presumption of constitutionality. *State v. Hoeft,* 1999 SD 24, ¶ 15, 594 N.W.2d 323, 326; *State v. Shult,* 380

N.W.2d 352, 356 (S.D.1986). If we can, we must reasonably construe a statute as constitutional and valid. *State v. Morrison*, 341 N.W.2d 635, 637 (S.D.1983). Legislative enactments are sustained "where the general intent of the Legislature is capable of being understood. The fact that the language used is capable of more than one construction is not fatal, nor does the necessity of interpretation render an enactment void." *Romey v. Landers*, 392 N.W.2d 415, 419 (S.D.1986) (citing *State v. Spink Hutterian Brethren*, 77 S.D. 215, 239, 90 N.W.2d 365, 378 (1958)). "An act, although somewhat vague and uncertain, or not as clear as it might be, may nevertheless be valid, unless it is so imperfect as to render it impossible to execute it or to ascertain the legislative intent." *Berdahl v. Gillis*, 81 S.D. 436, 443–44, 136 N.W.2d 633, 637 (1965). Furthermore, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision. *State v. Hauge*, 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175 (citations and quotations omitted).

[¶ 44.] The standard for determining whether a statute is unconstitutionally vague was reiterated in *Lodermeier v. Class*, 1996 SD 134, ¶ 18, 555 N.W.2d 618, 625:

> A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must

necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice [of what] conduct is forbidden.

*Id.* (citations and quotations omitted).

[¶ 45.] Our review of the provisions of SDCL ch 32–22 do not convince us that Krahwinkel has overcome his burden to show evident unconstitutional vagueness. A plain reading of SDCL 32–22–16 reveals that:

> No motor vehicle ... operating on a public highway may have a weight:
>
> . . . .
>
> (3) In excess of the maximum weight on two or more consecutive axles as determined by the formula detailed in SDCL § 32–22–16.1. . . .

Krahwinkel was cited for violating SDCL 32–22–16.[12] The application of SDCL 32–22–16 to the facts is not difficult. The statute limits the weight of a vehicle traveling on the Interstate to 80,000 pounds, or if the operator has a single trip permit as Officer Bryant determined here, then Krahwinkel's maximum weight was calculated at a higher allowable weight within the confines of the bridge formula. To determine the maximum allowable gross weight that can be carried on a group of two or more consecutive axles, Officer Bryant applied the bridge formula under SDCL 32–22–16.1 ($W = 500 [LN/(N-1) + 12N + 36]$). First, he measured the distance between the outermost axles on

---

12. The circuit court noted that SDCL 32–22–16.1 describes the so-called "bridge formula" and does not independently provide for an overweight violation. Instead, SDCL 32–22–16.1 must be read in conjunction with SDCL 32–22–16. Ticket # 13999 did not cite the correct statute. After trial, the circuit court allowed the State to amend Ticket # 13999 to reflect the correct statute. The original ticket clearly put any reasonable person on notice of the offense charged—"Overweight Bridge Axles 1–8." A review of the defendant's filings, from the inception of this case, well prior to trial, clearly shows the defendant was not prejudiced, surprised, or otherwise deprived of any due process rights as a result of this technical error.

Krahwinkel's vehicle (87 feet) and counted the total number of axles within the measured group (8 axles). Next, Officer Bryant inserted the length (87 feet = "L") and the number of axles (8 = "N") into the bridge formula to determine Krahwinkel's maximum allowable gross weight of 115,500 pounds. Because Krahwinkel's gross weight on Axles 1–8 was 166,400 pounds, he was 50,900 pounds over the weight limit (166,400—115,500 = 50,900).

[¶ 46.] Further, the South Dakota Motor Carrier Handbook clearly explains how the bridge formula works and includes a weight table for easy reference. Again, we note that many jurisdictions have found similar statutes and graduated fines reasonable to enforce weight limitations on public roads. *Goffe*, 676 A.2d at 1385; *Smith*, 187 A.2d at 270. In reviewing an Illinois statute similar to SDCL 32–22–16 and SDCL 32–22–16.1, the Illinois Supreme Court held that the statute establishing maximum permissible wheel and axle loads and gross weights provided fair notice of what conduct was prohibited, and was not unconstitutionally vague as applied to tractor-trailer operators. *Conlan*, 244 Ill.Dec. 350, 725 N.E.2d at 1240–42. Further, the *Conlan* court stated, "[w]e believe anyone who attempts in earnest to understand the statute can fully comprehend its terms and, more importantly, understand what is prohibited." *Id.* at 1241. The *Conlan* court concluded that the statute clearly passed the test of whether it provided due notice to the defendants, "giving them fair warning of what is prohibited, and explicit standards for those engaged in enforcement." *Id.; see also State Dep't of Public Safety v. Elk River Ready Mix Co., Inc.*, 430 N.W.2d 261 (Minn.App.1988) (statute dealing with vehi-

cle's weight limitations is not unconstitutionally vague when (1) it states what limits are legally permissible and how those limits are arrived at to determine permissible weight, and (2) although statute is complex, it provides a standard such that a person expected to comply with it need not guess at its meaning or differ as to its application.)

[¶ 47.] We conclude that SDCL ch 32–22 is not unconstitutionally vague as applied to Krahwinkel. First, persons of ordinary intelligence have a reasonable opportunity to know what is prohibited. Second, the statutes do not lend themselves to arbitrary enforcement by the police.

### 6. Applicability of Double Penalty

[¶ 48.] In *Young*, we held that SDCL 32–22–56 [13] applies when the gross vehicle weight exceeds the permissible weight by 10,000 pounds and not in cases where an individual axle weight exceeds the statutory limits but gross vehicle weight is less than the specified maximum. 2001 SD 76, 630 N.W.2d 85. Krahwinkel's gross weight violation (total weight exceeded the allowable weight by more than 10,000 pounds) invokes the double penalty in SDCL 32–22–56.

[¶ 49.] Officer Bryant measured the distance between the extreme or outermost axles on Krahwinkel's tractor-trailer combination. This measurement of axle group 1–8 consisted of all eight axles on Krahwinkel's vehicle. If the extreme axles on a vehicle, front and rear, are being considered, and the total weight or load exceeds allowable limits, a gross weight violation has occurred in the traditional

---

**13.** In 2002, the Legislature repealed SDCL 32–22–56 and amended SDCL 32–2–55 to include an additional penalty class: "In an amount equal to seventy-five cents per pound for each pound of such excess or combined excess weight if such excess is more than ten thousand pounds."

sense. *Conlan,* 244 Ill.Dec. 350, 725 N.E.2d at 1242.

[¶ 50.] Clearly, SDCL 32–22–56 applied to Krahwinkel's gross weight violation. Krahwinkel was properly assessed a double civil penalty for his gross weight violation.

### 7. Lift Axle Control in Cab

[¶ 51.] Krahwinkel maintains that he was improperly charged for violating SDCL 32–22–57.1. He argues that his tractor was registered in Montana and SDCL 32–22–57.1 only applies to vehicles "registered in South Dakota."

[¶ 52.] During the trial, Officer Bryant indicated that Krahwinkel's vehicle was proportionally registered and licensed. In South Dakota, proportional registration is available to owners who operate one or more fleets, each consisting of one or more commercial vehicles in this state in interstate commerce. SDCL 32–10–15. An owner may register each fleet by filing an application for proportional registration in lieu of registering each vehicle individually. *Id.* Moreover, proportionally registered interstate fleet vehicles registered and identified under SDCL 32–10–17 "shall be deemed to be fully licensed and registered in this state for any type of movement or operation." SDCL 32–10–20.

[¶ 53.] Accordingly, under SDCL 32–10–20 Krahwinkel's vehicle is deemed to be fully registered in South Dakota for any type of movement or operation. SDCL 32–22–57.1 provides in pertinent part:

> Any motor vehicle registered in South Dakota which is equipped with a variable load axle ... shall be equipped with a pressure control device. The control for adjusting pressure shall be mounted outside of the driver compartment....

Thus, Krahwinkel is in violation of SDCL 32–22–57.1 because his pressure control device was located inside his driver compartment and his vehicle was registered in South Dakota. Lastly, Krahwinkel cites no authority for his argument that his conviction on this statute violates interstate commerce.

[¶ 54.] Affirmed.

[¶ 55.] GILBERTSON, Chief Justice, and SABERS and ZINTER, Justices, and AMUNDSON, Retired Justice, concur.

[¶ 56.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.