2004 SD 138

**Steven HOBART, Petitioner
and Appellee,**

v.

**George FEREBEE, Respondent
and Appellant.**

No. 23075.

Supreme Court of South Dakota.

Argued on Nov. 17, 2004.

Decided Dec. 29, 2004.

Linda Lea M. Viken, Lisa L. Kiser, Rapid City, South Dakota, Attorneys for petitioner and appellee.

Dedrich R. Koch of Winter and Koch, Rapid City, South Dakota, Attorneys for respondent and appellant.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we review a protection order that prohibited defendant from harassing plaintiff, but also forbade defendant from filing any complaint against plaintiff with local, state, and fed-

eral government agencies, without first paying a fee to and obtaining permission from the circuit court. This order was entered after defendant made numerous complaints, many of them frivolous, against plaintiff to government authorities. Because the protection order unconstitutionally constrains defendant's right of free speech, we vacate that part of the order prohibiting defendant from petitioning government agencies.

## I.

[¶ 2.] Steve Hobart and George Ferebee have been neighbors in rural Pennington County for almost two decades. For much of that time, their relationship was acrimonious. In 1999, the tension between these two ranchers worsened. A string of complaints ensued. Hobart alleged that Ferebee assaulted his son and had made earlier death threats against his family. Ferebee reported to the sheriff's office that Hobart's son tried to hit him with an automobile. These complaints culminated in the two men obtaining court orders restraining each from harassing or stalking the other. By mutual agreement, the restraining orders were later extended.

[¶ 3.] Before the termination of his restraining order in December 2002, Hobart requested from the United States Forest Service (USFS) information regarding any inquiries by third parties about him, his property, or his business interests. The data he received revealed that beginning in January 2001, Ferebee had been contacting the USFS about activity on Hobart's property and USFS property on which Hobart maintained grazing permits. Ferebee's complaints ranged from cows on roads to early entry of livestock onto federal grazing lands. Many of the complaints concerned cattle grazing in inappropriate areas at inappropriate times. In most instances, Hobart either had taken

care of the problem or was in the process of rectifying the problem when Ferebee lodged his complaint. Ferebee also complained about livestock damage to a local stream. In addition, Hobart discovered that Ferebee had made several information requests through the Freedom of Information Act concerning Hobart or his property. As a result of the numerous and frequent complaints generated by Ferebee, the USFS notified Ferebee that any further complaints should be in writing and directed to certain personnel.

[¶ 4.] During this time, Ferebee also complained to the South Dakota Department of Game Fish and Parks (GF & P) about a snowmobile trail that crossed through Hobart's land. Because of Ferebee's perception that the GF & P was doing little to address his concerns, he contacted Senator Tom Daschle's office for assistance. Ferebee's complaint was that an environmental impact study had not been completed before the GF & P approved the trail. Because of Ferebee's complaints, at least a portion of the trail was abandoned.

[¶ 5.] In addition to the other complaints, Ferebee brought his disputes with Hobart to the Pennington County Planning and Zoning Board. He inquired of the Board about a dam being constructed on Hobart's property and various zoning issues. The dam apparently was on a dry creek that when flowing also crossed Ferebee's property. The zoning complaints generally concerned structures that did not adhere to setback requirements. While the dam was confirmed to be for agricultural purposes and therefore exempt from permitting requirements, at least one of Ferebee's complaints regarding a zoning violation resulted in the Board concluding that a structure was not in compliance.

[¶ 6.] Ferebee also reported to authorities that one of his bulls had been stolen. In fact, the bull had wandered onto Hobart's land. Hobart put the bull in his trailer and moved it back to Ferebee's property. Ferebee reported Hobart to the South Dakota Brand Board in an attempt to get him arrested for hauling the bull without a permit under SDCL 40–21–3.1. That statute provides that "[n]o person may transport cattle ... on any public highway in this state or over any land of which he is not the owner or tenant, without the written permission of the owner of the cattle[.]" The Brand Board declined to pursue criminal prosecution.

[¶ 7.] Most of Ferebee's complaints were transparent attempts to make life as difficult as possible for Hobart. On July 8, 2003, Hobart moved to continue his previous protection order or for a new order against Ferebee. Hobart did not allege that Ferebee had continued to threaten him or his family, but he asserted that Ferebee's harassment had taken a new form: harassment through third parties. Ferebee's incessant complaints had required Hobart "to answer to various local, state, and federal agencies, departments, and boards for unsubstantiated complaints[.]" Hobart wanted it stopped. A hearing was held on August 4, 2003, and the circuit court ruled from the bench. Thereafter, the court, on October 16, 2003, entered its findings of fact and conclusions of law and an order for protection.

[¶ 8.] The judge's order restrained Ferebee from making any "credible threat to [Hobart] with the intent to place [him] in reasonable fear of death or great bodily injury...." Ferebee was ordered to "have no contact with [Hobart] or his family at any place and ... not verbally contact [Hobart], including phone contact and ... not verbally abuse or threaten [Hobart.]" The order prohibited Ferebee "from com-ing within 500 feet of [Hobart] personally and of [Hobart's] property, except for that portion of property where the parties share a common border[.]" With respect to Ferebee's complaints to government agencies, the order provided that "should [Ferebee] wish to file a complaint regarding [Hobart] to a county, federal, or state agency ... he shall submit his complaint in writing, in affidavit form to the Court ... with a $25 fee for each complaint contained in the affidavit." The order was to last for three years.

[¶ 9.] In his appeal, Ferebee raises the following issues: (1) "It was an abuse of discretion for the trial court to find that Hobart met his burden pursuant to SDCL 22–19A and to deny Ferebee's motion for directed verdict." (2) "Ferebee's complaints to authorities were constitutionally protected activities." (3) "Whether the trial court committed error when it admitted and otherwise considered hearsay evidence." (4) "It was error for the trial court to adopt a finding that appellant had made threats which placed appellee in reasonable fear of death or great bodily injury." (5) "It was an abuse of discretion for the trial court to deny Ferebee's proposed findings of fact and conclusions of law." We address Issues 2 and 4.

## II.

[¶ 10.] Like other injunctions, we review protection and restraining orders for abuse of discretion. *Shore v. Cruz*, 2003 SD 81, ¶ 8, 667 N.W.2d 312, 314. Issues of statutory construction are examined de novo. *State v. Krahwinkel*, 2002 SD 160, ¶ 13, 656 N.W.2d 451, 458 (citing *State v. Barton*, 2001 SD 52, ¶ 8, 625 N.W.2d 275, 278). In reviewing questions of statutory construction, we strive "to ascertain the intent of the law." *Id.* A statute's plain language normally expresses its intent. *Id.* (citing *Faircloth v. Rav-*

*en Indus., Inc.*, 2000 SD 158, ¶ 6, 620 N.W.2d 198, 201). When an asserted error implicates an intrusion of a constitutional right, our review is de novo. *Id.* (citing *State v. Dillon*, 2001 SD 97, ¶ 12, 632 N.W.2d 37, 43).

[¶ 11.] The order issued by the trial court is based on South Dakota's stalking statutes, found in SDCL chapter 22–19A. SDCL 22–19A–1 provides:

Any person:

(1) Who willfully, maliciously, and repeatedly follows or harasses another person;

(2) Who makes a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury; or

(3) Who willfully, maliciously, and repeatedly harasses another person by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication[,] is guilty of the crime of stalking. Stalking is a Class 1 misdemeanor.

If, however, a person "violates § 22–19A–1 when there is a temporary restraining order, or an injunction, or a protection order, in effect prohibiting the behavior described in § 22–19A–1 against the same party, that person is guilty of a Class 6 felony." SDCL 22–19A–2.

[¶ 12.] The term "harasses" is defined in SDCL 22–19A–4 as "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose." In turn, the phrase "course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of course of conduct." SDCL 22–19A–5.

[¶ 13.] Ferebee challenges the constitutional validity of the circuit court's order, but not the statutes upon which the order was based. The order forbids Ferebee from directly filing "a complaint regarding [Hobart] to a county, federal, or state agency, specifically to include any of the following agencies: Pennington County Sheriff, Pennington County Planning and Zoning Department, Pennington County Commission, South Dakota Brand Board, South Dakota Department of Environment and Natural Resources, South Dakota Game Fish and Parks Department, or the United States Forest Service, Department of Agriculture" unless Ferebee "submit[s] his complaint in writing, in affidavit form to the court . . . with a $25 fee for each complaint contained in the affidavit." The order neither applies to "public hearings or responses requested of [Ferebee] by government agencies" nor forbids Ferebee from contacting any of South Dakota's congressional delegates.

[¶ 14.] The First Amendment forbids advance restraints on speech. Thus, there is a strong presumption against the constitutional validity of any such prior restraint. *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 733, 51 S.Ct. 625, 637, 75 L.Ed. 1357 (1931). In *Near*, the United States Supreme Court declared that prior restraints are permissible only in exceptional cases, such as war, obscenity, and "incitements to acts of violence and the overthrow by force of orderly government." *Id.* at 716, 51 S.Ct. at 631. The term "prior restraint" is used " 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur. Temporary restraining orders and permanent injunctions— i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.' " *Alexander v. United*

*States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993) (internal citations omitted). An advance restraint on speech is the most intolerable infringement of First Amendment rights. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976). "If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." *Id.* (citations omitted).

■■■■ [¶ 15.] When a temporary restraining order or injunction constitutes a prior restraint of speech, it carries a "heavy presumption" of unconstitutionality. *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). To overcome this presumption, an injunction must not burden more speech than required to accommodate a significant government interest. *State v. Hauge,* 1996 SD 48, ¶ 7, 547 N.W.2d 173, 176 (citing *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 765, 114 S.Ct. 2516, 2525, 129 L.Ed.2d 593 (1994)). *See also In re Marriage of Suggs,* 152 Wash.2d 74, 93 P.3d 161, 165 (2004). Such an injunction must be framed in terms no broader than necessary to accomplish its specific, constitutionally permissible objective. *Carroll v. President & Commissioners of Princess Anne,* 393 U.S. 175, 183, 89 S.Ct. 347, 353, 21 L.Ed.2d 325 (1968).

■■■■ [¶ 16.] Undoubtedly, this order is a prior restraint on speech. Before filing any complaint, legitimate or illegitimate, Ferebee must submit it in affidavit form to the court along with a $25 fee. Only if the circuit court rules the complaint meritorious will it then refund the money and allow Ferebee to file it with the appropriate agency. If the court finds that the complaint is without merit, Ferebee cannot file it, and he forfeits his $25. This abridges Ferebee's fundamental right to petition the government. "The right to petition the government for a redress of grievances is . . . constitutionally protected activity, and one of the most precious liberties 'safeguarded by the Bill of Rights.'" *Curry v. State,* 811 So.2d 736, 742 (Fla. Dist.Ct.App.2002) (quoting *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967)). Included in that right is the entitlement to petition administrative agencies and law enforcement officials. *See id.* at 743 (citations omitted).

■■■■ [¶ 17.] The right to petition the government does not hinge on an individual's motivation because, as stated by the Supreme Court, "[i]t is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 139, 81 S.Ct. 523, 531, 5 L.Ed.2d 464 (1961). Even biased and improperly motivated speech is protected by the First Amendment. *State v. Springer–Ertl,* 2000 SD 56, ¶ 12, 610 N.W.2d 768, 772 (citations omitted).

■■■■ [¶ 18.] Having concluded that the trial court's order is a prior restraint on Ferebee's First Amendment rights, we must next decide whether the order exceeds permissible bounds by burdening more speech than necessary to accomplish its specific and constitutionally permissible objective. In *State v. Asmussen,* 2003 SD 102, ¶ 8, 668 N.W.2d 725, 730, we discussed the legitimate purpose of our stalking statutes. We stated, "stalking is a serious concern of society. The [L]egislature, therefore, has a legitimate interest in protecting those who are harassed and placed in serious fear for their safety." *Id.* ¶ 9. There, based on a "plainly legitimate application" of the statutes, we concluded that

there was no threat to protected speech in a "real" or "substantial" sense. *Id.* However, we cannot say that the protection order here falls in the same category.

[¶ 19.] Our view on this issue is supported by the plain language of our laws. SDCL 22–19A–5 specifically exempts from the coverage afforded by the chapter activity protected by the First Amendment. While it is difficult to list all the types of speech protected by the Constitution, this Court and others have often noted categories of speech deemed unprotected. *See In re S.J.N.-K,* 2002 SD 70, ¶ 11, 647 N.W.2d 707, 711 (listing lewd, obscene, profane, libelous, and inciting words as classic examples of unprotected speech). Ferebee's complaints to various agencies do not approach any of these categories.

[¶ 20.] Reporting potential violations of laws to an appropriate agency is ordinarily protected speech. True, those investigating Ferebee's multitudinous complaints did not find many of his inquiries and accusations to be credible. However, we do not believe that a complaint's legitimacy turns on whether it is eventually sustained. A majority of the complaints were taken seriously. In oral argument, Ferebee's attorney insisted that none of his client's complaints were frivolous. In one sense, perhaps he was right. A hairline crack in a neighbor's driveway may be a violation of some minor ordinance, but reporting it to authorities repeatedly might be more about harming the driveway owner than a public-spirited interest in maintaining adherence to the law. Just so with Ferebee's complaints-most had a micron of legitimacy. They were not frivolous in the sense that they had no merit, but, as the circuit court found, they were intended to harass and annoy, and in that sense they were frivolous, as well as malicious. Nonetheless, judicial censorship of these complaints goes well beyond what is nec-

essary to accomplish a specific, constitutionally permissible objective. Even valid prior restraints may not employ "means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

[¶ 21.] Here, the circuit court ordered an absolute prohibition of Ferebee's right to lodge complaints against Hobart with various government entities. "[A]bsolute prohibition[s] on a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling governmental interest." *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983) (citations omitted). With this speech-restraining injunction prohibiting complaints to agencies whose function it is to deal with citizen complaints, we can see no compelling government interest in upholding it. Certainly, the order was not narrowly drawn when it failed to distinguish between complaints neither unlawful nor unfounded. *See United States v. Kaun,* 827 F.2d 1144, 1150 (7thCir.1987) (upholding injunction prohibiting speech promoting fraudulent tax avoidance scheme).

[¶ 22.] Hobart insists that the trial court's order seeks only to prohibit "any further harassment of Hobart by use of third party agencies ..., which were not legitimate complaints[.]" This argument misses the point. Our concern is not with the intent of the order but with its effect. We focus not on what the order constitutionally prevents, but on what it unconstitutionally constrains. The order plainly freezes Ferebee's legitimate rights. Some of Ferebee's complaints, though ill motivated, were treated as legitimate by the agencies he contacted. And for those that were frivolous, the government agencies themselves were suitably equipped to deal

with them. Under the judge's order here, no complaint, no matter how well justified, no matter how urgent, could be lodged without prior court approval and payment of a fee. "The essence of prior restraint is that it places specific communications under the personal censorship of the judge." *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 468 (5thCir.1980), *aff'd*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

[¶ 23.] Hobart's argument that the order leaves Ferebee with alternative means to address his grievances is unpersuasive. Ferebee may not initiate contact with government agencies, boards, and commissions. He must wait until the board or commission convenes or until he is specifically contacted before he may bring a complaint. Even where Ferebee is permitted to attend those meetings and voice his opinion, it is questionable whether the order permits him to bring up issues that were not independently brought forth by the board or commission. Ferebee's unlimited access to South Dakota's congressional delegation does not sufficiently leave open a path for his right to express grievances. Often citizens who contact their representatives in Congress are merely directed to an appropriate agency for assistance. Given such guidance, Ferebee could not avoid the requirements of the order issued by the court below.

[¶ 24.] The circuit court abused its discretion in issuing the portion of the order limiting Ferebee's access to the government. This restraint on protected speech went too far. We do not declare how precisely the circuit court may proceed to restrict or punish Ferebee if he persists in harassing Hobart. That is not for us to decide at this time. We conclude only that the order fashioned by the court was an absolute prior restraint on protected speech, impermissible under the Constitution, given the facts of this case.

[¶ 25.] Our decision today is in accord with the nature and intent of our stalking statutes. The protection order initially granted by the circuit court fulfilled its purpose. From the time that order was issued, incidents of direct contact between Ferebee and Hobart ceased. Thereafter, the disputes between the parties moved into the governmental arena. Dealing with such issues is an appropriate task of our government agencies and should only be restrained in the rarest of instances. We vacate those portions of the protection order forbidding Ferebee from making complaints to county, state, and federal agencies, and requiring pre-filing and payment of a fee in circuit court.

### III.

[¶ 26.] Lastly, we address Ferebee's complaint that the findings in support of the protection order were clearly erroneous because they declared that he "made threats which place [Hobart] in reasonable fear of death or great bodily injury." Hobart's motion to continue the prior protection order made no claim that Ferebee had continued to threaten violence. Furthermore, at the hearing, the circuit court prohibited both sides from offering evidence of threats or violence. In fact, the court specifically stated during the hearing that it "will not enter any order concerning threats," as defined in the protection order statutes. As a matter of law, therefore, the circuit court erred in entering these findings. However, insofar as this order was an extension of the original protection order, the prohibition against making threats should stand. As to the remainder of Ferebee's issues, either we find no merit in them or we find it unnecessary to address them given our decision above.

[¶ 27.] Reversed in part, vacated in part, and affirmed in part.

[¶ 28.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.